## Dave Coffey v. The State.

No. 605. Decided October 12, 1910.

**1.—Murder—Statement of Facts—Order of Extension—Term of Court.**

Where the term of the District Court lasted more than eight weeks the statement of facts and bill of exceptions must be filed within thirty days after final judgment, and an extension of the time of filing such statement of facts, etc., can not be made after the expiration of the said thirty days.

**2.—Same—Statement of Facts—Filing—Extension—Docket.**

Where the district judge, on overruling the motion for new trial entered an order on his docket allowing the filing of a statement of facts and bills of exception twenty days after the adjournment of court, and it appeared of record that said statements, etc., were filed before the adjournment of said term of the court, the same was filed in time.

**3.—Same—Continuance—Want of Diligence.**

Where it appeared from the face of the application for a continuance that the defendant had not used proper diligence to secure the attendance of the alleged absent witnesses, etc., there was no error in overruling the application.

**4.—Same—Evidence—Bill of Exceptions—Expert Opinion.**

Where, upon appeal from a conviction of murder, it appeared from the record that the defendant objected to the questions propounded to witness as to the defendant's intelligence, because the witness had not qualified himself as an expert to give an expert opinion, but the bill of exceptions did not state what the answer of the witness would have been, there was no error. Following White v. State, 32 Texas Crim. Rep., 625, and other cases.

**5.—Same—Bills of Exception—Practice on Appeal—Insanity.**

Parties asserting the availability of supposed errors by the court below in admitting testimony, must make their bills of exception so full and satisfactory in their statements that in and of themselves such bills will disclose all that is necessary to manifest a supposed error; and where the bill of exceptions does not give the answer to the objected questions with reference to the defendant's sanity, the same can not be considered on appeal. Following Davis v. State, 14 Texas Crim. App., 645, and other. cases.

**6.—Same—Evidence—Husband and Wife—Tendering Witness.**

Upon trial of murder, where the district attorney in cross-examination of the defendant asked him whether his wife desired to live with the defendant which the latter answered affirmatively and that he could prove it by her, whereupon State's counsel informed him of his wife's attendance on the court and tendered her to defendant as a witness, there was no reversible error. Distinguishing Moore v. State, 45 Texas Crim. Rep., 234.

**7.—Same—Charge of Court—Provoking Difficulty—Bill of Exceptions.**

Where, upon appeal from a conviction of murder, the bill of exceptions was insufficient as a complaint to the charge itself, but was sufficient, however, to raise the issue as to whether the court was justified in giving a charge on provoking the difficulty, the Appellate Court will nevertheless look to the evidence, and finding same sufficient to raise said issue, there was no reversible error; especially as the court submitted requested charges on this issue which were more favorable than the law required.

**8.—Same—Charge of Court—Insanity.**

Where, upon trial of murder, the evidence did not raise the issue of insanity, there was no error in the court's failure to charge the jury on the law of insanity.

Appeal from the District Court of Wichita. Tried below before the Honorable A. H. Carrigan.

Appeal from a conviction of murder in the second degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Fred W. Householder,* and *Geo. A. Smoot* and *S. M. Foster,* for appellant.—Upon question of filing statement of facts and bills of exception, and as to the Appellate Court's right to ascertain this fact by affidavits and perfecting the record: Const., Art. 5, Sec. 6; Craddock v. State, 15 Texas Crim. App., 641; McCorquodale v. State, 98 S. W. Rep., 879; Castleman v. State, 44 S. W. Rep., 828; Poyner v. State, 48 S. W. Rep., 516; Western Union Tel. Co. v. O'Keefe, 28 S. W. Rep., 945; Ry. Co. v. Peery, 30 S. W. Rep., 435; Ry. Co. v. Cannon, 31 S. W. Rep., 498; Rice v. Reese, 110 S. W. 502; Ry. Co. v. Felts, 128 S. W. Rep., 155.

On question of opinion of witness on insanity: McClackey v. State, 5 Texas Crim. App., 320; Thomas v. State, 40 Texas, 60; Williams v. State, 37 Texas Crim. Rep., 348; Holcomb v. State, 41 Texas, 125; Penal Code, Art. 39; Code Crim. Procedure, 574.

On question of the court's charge on provoking the difficulty: Cartwright v. State, 14 Texas Crim. App., 486; Dent v. State, 46 Texas Crim. Rep., 166; McCandless v. State, 42 Texas Crim. Rep., 58; Morgan v. State, 34 Texas Crim. Rep., 222.

On the question of the court's refusal to charge on insanity: Scott v. State, 10 Texas Crim. App., 112; Davis v. State, 28 Texas Crim. App., 542; White's Code Crim. Procedure, Sec. 801, and authorities there cited.

On question of the remarks of State's counsel in tendering defendant's wife as witness and failure of latter to testify: Moore v. State, 75 S. W. Rep., 497; Knowles v. People, 15 Mich., 408; Penny v. State, 42 S. W. Rep., 297; Bluman v. State, 26 S. W. Rep., 75; Stein v. Bowman, 13 Peters, 209; McKelvey on Ev., p. 380, 2nd ed.; Code Crim. Procedure, Art. 775; Hare v. State, 56 Texas Crim. Rep., 6; 118 S. W. Rep., 544; Miller v. State, 45 Texas Crim. Rep. 517; 78 S. W. Rep., 511.

*John A. Mobley,* Assistant Attorney-General, for the State.—Cited cases in opinion.

RAMSEY, JUDGE.—The appeal in this case is from a judgment convicting appellant of murder in the second degree and assessing his punishment at confinement in the penitentiary for life.

It appears from the record that the District Court began in Wichita County upon the 31st day of May, 1909, and adjourned on the 3rd day of September of the same year, the term including considerable time beyond eight weeks. It further appears that the appellant's motion for new trial was overruled on July 13th of last year and he was by the court on the same day duly sentenced. The statement of facts in the case was filed in the court below on October 1, 1909. On August 13th the court made and entered an order as follows: "Upon request defendant is granted sixty days extension of time from this day in which to file statement of facts and bills of exception." From July 13th to August 13th, excluding both days, full thirty days intervened, and with the close of August 12, 1909, the time allowed by law within which to file a statement of facts, in view of the fact that the term of court lasted more than eight weeks, had elapsed. It was not competent for the court thereafter, by order, to extend the time for filing such statement of facts. Section 7 of the Act of the Thirty-first Legislature, p. 376, is as follows:

"When an appeal is taken from the judgment rendered in any cause in any District Court or County Court, the parties to the suit shall be entitled to and they are hereby granted thirty days after the day of adjournment of court in which to prepare and file a statement of facts and bills of exception; and upon good cause shown the judge trying the cause may extend the time in which to file a statement of facts and bills of exception. Provided, that the court trying such cause shall have power in term time or in vacation, upon the application of either party, for good cause, to extend the several times as hereinbefore provided for the preparation and filing of the statement of facts and bills of exception, but the same shall not be so extended so as to delay the filing of the statement of facts, together with the transcript of record, in the Appellate Court within the time prescribed by law, and when the parties fail to agree upon a statement of facts, and that duty devolves upon the court the court shall have such time in which to do so, after the expiration of the thirty days as hereinbefore provided, as the court may deem necessary, but the court in such case, shall not postpone the preparation and filing of such statement of facts and bills of exception so as to delay the filing of same, together with a transcript of the record in the Appellate Court within the time prescribed by law. Provided, if the term of said court may by law continue more than eight weeks, said statement of facts and bills of exception shall be filed within thirty days after final judgment shall be rendered unless the court shall by order entered of record in

said cause extend the time for filing such statement and bills of exception." We have heretofore held that when once the time allowed by law within which to file the statement of facts and bills of exception has passed it is not competent for the court by order to extend the time. This seems to be the clear meaning of the statute. We are not, therefore, authorized to consider either the statement of facts or bills of exception in the record. Without a statement of facts or bills of exception, there is no issue or question which, under the law, we are authorized to consider and it follows that the judgment of conviction must be and it is hereby affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

#### October 12, 1910.

RAMSEY, JUDGE.—On the 25th day of May of this year the judgment of conviction in this case was, by this court, affirmed. On the record, as it then appeared before us, we concluded that the statement of facts had not been filed within such time as to authorize us to consider same. Since then a motion for rehearing has been filed in which it is made to appear that on July 13, 1909, on the overruling of the motion for new trial an order was entered by the court on his docket in which twenty days after adjournment was allowed within which to file a statement of facts and bills of exception, which entry is also supported by a statement of both the district judge and district clerk of the trial court. In this condition of the record there seems to be no doubt but that the statement of facts was in fact filed in the time allowed by law and it is manifest, therefore that the motion for rehearing should be granted which is now done and the case will be disposed of on its merits.

The facts show that appellant and the deceased, Sam Barnett, were brothers-in-law; that appellant had had some trouble with his wife resulting in her abandoning him, in which, without going into the reasons for it, the deceased figured somewhat actively. After the separation sometime the appellant returned to Wichita County and worked a short time and during this time, the evidence shows, he uttered the most serious and direct threats toward Barnett and on the day of the homicide hired a gun, went to his place, approached the house under circumstances which indicate that he was seeking to observe the actions and whereabouts of Barnett, fired one shot at him on the outside of his house, pursued him with his gun in his hand into his house and just as Barnett got his gun and before he fired, shot and killed him. There is ample evidence in the record offered by the State, if believed, to show an aggravated case of murder in the first degree. On the other hand, appellant testified that his purpose and mission in going to Barnett's house was peaceful and warranted and that his act in shooting Barnett was in self-defense. The evidence tends to show that appellant was an uneducated man, indeed very

ignorant and could neither read nor write, and it is contended by his counsel in an able brief and argument that the evidence raised the issue of insanity which was not submitted by the court. This is a mere outline of the case but will be sufficient, however, to make understood what we shall say.

1. The first matter presented relates to the action of the court in overruling appellant's application for a continuance. The record shows that the indictment in the case was returned against appellant on the 3rd day of June, 1909. Application was made to continue the case on account of the absence and for the want of the testimony of J. M. James and wife and on account of the absence of appellant's wife. It is alleged in general terms that subpœnas were asked for in due time and directed to the sheriff or any constable of Wichita County, Texas, but does not allege when they were issued or that they were in fact placed in the hands of the sheriff or any constable of Wichita County, Texas, or by whom they were so placed. The record further shows that the subpœna for J. M. James was returned into court on the 10th day of June and subpœna for Mrs. James and Mrs. Coffey returned into court on the 21st day of June, 1909. The judgment of conviction was rendered in the case on July 10th. There is in the application a general allegation that neither appellant nor his counsel knew at the time the subpœnas were issued that these witnesses did not reside in Wichita County, and that he had learned of their residences in Oklahoma only on the morning of the day when the application was filed. What effort had been made to learn of their whereabouts is not disclosed, nor is there any statement of any diligence used to ascertain their whereabouts or to secure their testimony from the day of the return of the subpœnas until the case was called for trial. It further appears that Mrs. Coffey was present at the trial. It does not appear that either James or his wife were present. The testimony of James and his wife was in a general way material, but their testimony did not relate to the immediate facts of the killing. We think, as presented, that there was such an utter lack of diligence, tested by the allegations in the application to secure the attendance of these witnesses and to procure their testimony, as authorized the court in overruling the application and there is no such error shown in the record as would justify us in reversing the case on account of this action of the court.

2. While the witness Miller was on the stand he was asked by appellant's counsel the following question: "Judging by defendant's actions, was he considered a man of average intelligence or foolish?" This was objected to on the ground, first, that the witness had not qualified himself to render a non-expert opinion and had not qualified as an expert to render an expert opinion in regard to the intelligence of appellant and because it was immaterial as to whether the defendant is of average intelligence, above the average or below the average. This bill is manifestly insufficient and incomplete in that it does not

state what the answer of the witness would have been. White v. State, 32 Texas Crim. Rep., 625; Childers v. State, 37 Texas Crim. Rep., 392; Bailey v. State, 37 Texas Crim. Rep., 579; Adams v. State, 35 Texas Crim. Rep., 285 and Rodgers v. State, 34 Texas Crim. Rep., 612. So that it becomes unnecessary for us, nor do we feel called upon to pass on the other questions raised by the objection.

3. The third and fourth bills of exception relate to the same matter and may well be grouped together. While the witness J. B. Holtzclaw was on the stand, among other things, he was asked the following question by counsel for the appellant: "Do you know, Mr. Holtzclaw, of any accident, or any act on the part of the defendant in this case, during his life time, that led you to believe that he was a person of unsound mind?" While the witness John Coffey was on the stand he was asked the following question: "Do you know of any accident that befell defendant in his infancy or early boyhood that was probably the cause of his incapacity?" This being objected to as calling for a conclusion, the following question was thereupon asked: "Do you know of your own knowledge any accident that befell him in which he got a lick on his head?" To which the witness replied: "Well, I did not see the lick." There was no answer made by the witness Holtzclaw to the question propounded to him, nor does the bill indicate what his answer would have been, nor was there any further answer than that above given by the witness Coffey, nor does the bill show what other or additional information Coffey had about the matter inquired about. That these bills are incomplete there seems to be, under the authorities, no doubt. The rule is well settled that parties asserting the availability of supposed errors must make their bills of exception so full and satisfactory in their statements that in and of themselves such bills will disclose all that is necessary to manifest the supposed error. Davis v. State, 14 Texas Crim. App., 645; Eldridge v. State, 12 Texas Crim. App., 208; McGlasson v. State, 38 Texas Crim. Rep., 351; Thompson v. State, 29 Texas Crim. App., 208; Livar v. State, 26 Texas Crim. App., 115.

4. Among the most serious questions raised in the case is that disclosed and covered by appellant's fifth bill of exception. It will be remembered that appellant had made application for a continuance on account of the absence of his wife. At the conclusion of the testimony of appellant and as he was ready to close his case, and while he was yet on the witness stand, counsel for the State propounded to him the following questions to which he made the answers hereinafter given: "Q. You say that your wife has at all times desired to live with you. A. Yes, and she told me that the very last time in the jail house. Q. That is what you say. A. Yes, and if I had the officer here who took me up there I could prove it. Q. If you had her here herself would you prove it by her. A. I think I could. Q. Well, I inform you that she is now in attendance on this court and

I here and now tender to you your wife to use as a witness." To
this last statement on the part of the prosecuting attorney appellant
objected and excepted to the action of the court in permitting this
statement to be made and considered by the jury. It will be noticed
that this exception is very general and yet it is perhaps sufficient to
raise the question on which reversal is sought. In support of his
position counsel for appellant relies largely upon the case of Moore
v. State, 45 Texas Crim. Rep., 234. In that case it appeared
that Moore had testified that he had married the main State witness
on the day before the trial and thereupon the State's counsel had his
wife brought into court and placed her upon the witness stand and
asked her several questions and that Moore objected to her testimony
because she was his wife and the court having asked the witness if
she was his wife and upon her answering in the affirmative, sustained
his objection. Under the facts of that case this was held to be
reversible error because it was evident that Mrs. Moore was called
and placed upon the witness stand as tending to show that he had
married her in order to suppress her testimony and counsel had to
object to her evidence after it had been thoroughly established that
she was his wife and when the fact of the marriage could have been
easily ascertained from other sources. In that case Judge Davidson,
who wrote the opinion of the court, says: "The witness Satterfield
could have been required to testify that Susie Jones was in attendance
upon the trial and in the jury room; and the State could have shown
by any witness other than appellant's wife the matters about which
the inquiry was made. The fact that appellant had married Susie
Jones the day prior to his trial was also the subject of legitimate
inquiry from proper sources." But in that case counsel for the State
went further and not only placed Mrs. Moore upon the witness stand,
but in the presence of the jury asked her certain questions concerning
the facts of the case with the result that Moore felt impelled and
called upon to object to her testifying, and the proof went much further
than merely showing that Moore's wife was present and able to give
testimony if desired, but manifestly, while not in terms so stated, the
court must have held that the facts in the Moore case were in legal
effect a use of the wife against the husband, as a witness. It is stated
in the opinion that counsel for the State asked her "certain questions
with reference to *this case.*" It is well settled in this State and
has long been the doctrine that argument and allusion can be made
to the failure of a defendant to use his wife as a witness. Mercer
v. State, 17 Texas Crim. App., 452; Armstrong v. State, 34 Texas
Crim. Rep., 248; Smith v. State, 3 Texas Ct. Reporter, 357; 65 S.
W. Rep., 186, and in the majority opinion in the Moore case, 45
Texas Crim. Rep., 234, *supra,* it was held proper to show the marriage
and the presence of the witness on the trial. This was all that was
shown in this case, except the mere statement of the district attorney

that he now tendered to appellant his wife as a witness. This was no more than to inform him of her presence which in his application for continuance he had sought.

5. The next question raised by counsel for appellant relates to the action of the court in charging on the law of provoking the difficulty. This was excepted to in very general terms without assigning any reason or grounds therefor or pointing out any error in such charge. The bill merely quotes a part of the court's charge on this question and then adds: "To which said charge the defendant objected and defendant now tenders this his bill of exceptions to said charge on account of said error." In the recent case of Pollard v. State, 58 Texas Crim. Rep., 299, 125 S. W. Rep., 390, we held insufficient a complaint of a charge which was rendered more specific than the one here made. We there said that under the law of this State before we are authorized to review the correctness of a charge, either by bill of exceptions or motion for new trial, same must be objected to and the particular error pointed out. We think, however, that the complaint is sufficient to raise the issue as to whether the court was justified in giving a charge on this subject at all. A careful study of the testimony has convinced us that the issue of provoking the difficulty was raised by the testimony and that the court did not err in charging upon same, nor are we prepared, considering the charge of the court in connection with the special charges given at the request of counsel for appellant, to hold that there is any error in same. These special charges are as follows: "Therefore, if you believe from the evidence in this case that Sam Barnett, the deceased, did declare that he would get his gun and kill defendant, Dave Coffey, and at once proceed to run toward his house near by, and defendant believed from the appearance, as presented to him that deceased was only fleeing to gain a vantage from which he could renew the attack, defendant had a legal right to pursue the deceased until the threatened danger was over, and if you further believe from the evidence that deceased had gotten into his house and reached for his shotgun and defendant reasonably apprehended great bodily danger from the actions of deceased, the defendant had the right to shoot and kill the deceased, and if you so find you should acquit him. You will consider this charge together with the court's main charge on the law of self-defense."

"You are further charged that, although you believe from the evidence that the defendant, before the killing took place had coolly made up his mind to kill the deceased, and hired a gun and went to the place where the defendant was, yet, if upon meeting the deceased, the latter committed an assault upon the defendant, either by the use of abusive language, or by any act or threatening gesture and by such assault, word or gesture produced a reasonable expectation or fear of death, or some serious bodily injury in the mind of the accused, then

the fact that the accused had formerly made up his mind to do the killing would not eliminate his right of self-defense as explained to you in the court's main charge, then you should find the accused not guilty." These charges were, indeed, more favorable to appellant than the law required, and we would not feel authorized to reverse a case where, considering the charge altogether, there was no possibility of injury to the appellant.

6. Finally it is suggested that the court erred in not charging on the issue of insanity. We think that there was no error in the refusal of the court so to do. That appellant was an ignorant man, unlettered, all the evidence shows; that he had in his youth attacks of something like epilepsy was shown; that he had some kind of a spell on the day of the homicide is shown by his own testimony. He does not, however, in his own evidence claim that he did not perfectly understand everything that was said or done on the day of the killing or that he was laboring under the slightest mental infirmity. On the contrary he gives in great detail and very circumstantially a lengthy conversation between himself and deceased and undertakes to justify his act in killing him. There is not a single witness produced by him who gives the opinion, or whose testimony raises the issue that appellant did not have sufficient mind to comprehend the nature and character of his act. We have carefully considered the case in the light of the able brief filed by appellant's counsel and are convinced that if the testimony of the State is true, the jury was warranted in finding appellant guilty and that the appeal is without merit.

It is therefore ordered that the judgment of conviction be and the same is hereby in all things affirmed.

*Affirmed.*