Oscar H. Ahlberg v. The State.

No. 5790. Decided November 17, 1920.

1.—Bigamy—Common-law Marriage—Charge of Court.

Where, upon trial of bigamy, the evidence showed that the first marriage was probably a common-law marriage and the court instructed the jury in substance that, if the parties mutually consented and agreed together to become husband and wife, and thereafter carried out that agreement and lived and cohabited together as husband and wife, and held each other out to the public as such, the marriage would be valid under our law, there was no reversible error. Following Hearne v. State, 50 Texas Crim. Rep., 431, and other cases.

2.—Same—Sufficiency of the Evidence—Marriage—First Wife.

Where, upon trial of bigamy, the evidence showed that the parties of the first marriage long openly lived together as husband and wife and held themselves out as such, supplemented by declarations of the defendant to the effect that they were married and the defendant thereafter contracted a second marriage while his first wife was still living, the conviction is sustained. Following Bryan v. State, 63 Texas Crim. Rep., 204, and other cases.

3.—Same—Charge of Court—Implied Agreement—Requested Charges.

Where, upon trial of bigamy, the defendant objected to the court's charge that the common-law agreement between the defendant and his first wife could either be expressed or implied as to their marriage, any inapt statement in said charge was cured by the requested charge given for the defendant, and the jury could not have been misled thereby, there was no reversible error.

4.—Same—Evidence—Declarations by Defendant.

Upon trial of bigamy there was no error in admitting testimony that the defendant and his alleged first wife lived together and held themselves out as husband and wife; that defendant described her as his wife and introduced her as such and never denied such relationship, and that a daughter was born to them during said wedlock. Following Walker v. State, 41 Texas Crim. Rep., 199, and other cases.

5.—Same—Evidence—Letter—Child.

Where, upon trial of bigamy defendant questioned his parentage of the child born during the first marriage, there was no error in admitting in evidence his letter to the child in which he called her his little girl, etc.

6.—Same—Argument of Counsel—Practice on Appeal.

Where the argument of counsel was not harmful in its nature or a departure from the rules of practice, there was no reversible error.

7.—Same—Rehearing—Sufficiency of the Evidence—Marriage—Presumption.

Where, upon appeal from a conviction of bigamy, the record showed that defendant and his alleged first wife lived together as husband and wife and called each other such, and defendant declared such in his written statements, that they lived together for many years in such relation, during which a child was born to the said wife, etc., and the only witness who denied the marriage was the defendant himself, and the court in his charge submitted the law of statutory marriage in this State, and also what constituted a common-law marriage, the evidence was entirely sufficient to support the judgment, irrespective of the question of the common-law marriage.

8.—Same—Declarations of Defendant—Evidence.

The admission of the defendant that he was married prior to the alleged bigamous marriage is competent evidence against him in the trial for bigamy. Following Bell v. State, 33 Texas Crim. Rep., 163, and other cases.

9.—Same—Marriage—Evidence—Rule    Stated—Presumption    of    Statutory Marriage.

A former marriage may be proved by general repute, taken in connection with evidence of co-habitation and the admission of the accused. Following Adkison v. State, 34 Texas Crim. Rep., 296, and other cases; and the confessions of the accused taken together with the evidence of their co-habitation and other circumstances will sustain a conviction for bigamy, and the production of the license for the first marriage is not indispensable, nor is it necessary to produce witnesses who were present at such marriage. Following Morville v. State, 63 Texas Crim. Rep., 553.

10.—Same—Evidence—Remarks by Court—Prosecuting Attorney.

Where, appellant in his motion for rehearing complains that the prosecuting attorney in the court below asked him if he had not been warned by a neighbor that his course of conduct would likely get him into the penitentiary, but the record showed that the objection to the question was sustained and no answer was given, and the remarks by the court to the prosecuting attorney were not a comment on the weight of the evidence, there was no reversible error.

Appeal from the District Court of Milam. Tried below before the Honorable John Watson.

Appeal from a conviction of bigamy; penalty, three years' imprisonment in the penitentiary.

The opinion states the case.

*E. B. Simmons* and *S. J. Dotson,* for appellant.—On question of common law marriage: McCoombs v. State, 99 S. W. Rep., 1017; McNeil v. O'Connor, 79 Texas, 229.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of common law marriage: Knight v. State, 55 Texas Crim. Rep., 253; Bryan v. State, 63 id., 200, and cases cited in opinion.

MORROW, JUDGE.—The conviction is for bigamy. The appellant was married to Audrey Clark in June, 1919. A prior marriage to Ellen Ahlberg was charged, and supported by proof going to establish a common law rather than a statutory marriage. There was evidence that Ellen Ingall left her home in company with appellant in December, 1909; that soon thereafter appellant wrote the sister of Ellen to the effect that he and Ellen were married. They returned together to her father's home, and openly lived together as man and wife there and elsewhere for about nine years. The woman gave birth to a child, which, according to the State's evidence, was claimed by the appellant as his own, and was treated by him as a daughter. He introduced Ellen as his wife upon various occasions, according to the evidence, and the conduct of each of them towards their neighbors was such as to indicate that they were husband and wife.

The appellant testified that he and Ellen began living together without any agreement that they would become husband and wife, or that they would continue to live together during their lives. He disclaimed having declared that she was his wife, and claimed that he parted from her a few months before the date of his marriage to Audrey Clark.

The court instructed the jury in substance that "if the parties mutually consent and agree together to become husband and wife, and thereafter carry out that agreement and live and cohabit together as husband and wife, and hold each other out to the public as such, the marriage would be valid under our law." This embodies the principle which has repeatedly been given the sanction of this State. In Hearne v. State, 50 Texas Crim. Rep., 431, it is said:

"Whatever be the form of ceremony, or if there be no ceremony, if the parties agree to take each other for husband and wife, and from that time on live professedly in that relation, proof beyond a reasonable doubt of these facts would be sufficient proof of a marriage, binding on the parties." Burks v. State, 50 Texas Crim. Rep., 47,

and cases collated in dissenting opinion in Melton v. State, 71 Texas Crim. Rep., 138. In Grigsby v. Reib, 153 S. W. Rep., 1130, it is said:

"Marriage is not a contract but a *status,* created by mutual consent of one man and one woman. The method by which it is solemnized or entered into may be by proceedings prescribed by statute, or by mutual agreement with cohabitation, but, however, contracted, having the same elements and producing the *status* of husband and wife. The sole difference which can legally exist is in the method of expressing consent."

The proof requisite to establish the existence of the relation of husband and wife has been the subject of frequent comment. and proof considered in civil cases sufficient has been held inadequate in criminal prosecution. Underhill on Criminal Evidence, Sec. 403 and 404; Wharton's Crim. Evidence, p 472. In the instant case there is evidence that the parties long openly lived together as husband and wife, held themselves out as such, supplemented by declarations of the appellant to the effect that they were married, by which the rule sanctioned by this court is complied with. Dumas v. State, 14 Texas Crim. App., 464; Bryan v. State, 63 Texas Crim. Rep., 204; Waldrop v. State, 41 Texas Crim. Rep., 197; Ingersoll v. McWillie, 30 S. W. Rep., 61; Grigsby v. Reib, *supra.*

Particular complaint is made of the part of the charge which says: "Such agreement to become husband and wife may be expressed or implied. An expressed agreement is where the parties expressly so agree: an implied agreement is one where the conduct of the parties with reference to each other and the subject matter is such as to induce the belief, if any, that they mutually intend to do that which their acts indicate they have done." It may be that the term "implied agreement" is not an apt one in the connection used. The agreement to live together as man and wife was an essential element in establishing the marriage *status.* As used in the charge probably the term denotes merely a difference in the character of evidence by which the agreement is to be established, that is, whether by direct statement such as the admission that the agreement had been made, or by the proof of facts from which it might be inferred. Fordtran v. Stowers, 113 S. W. Rep., 631; Wojhan v. Bank, 144 Wisconsin, 646. Assuming that the charge would have been improved by the omission of the paragraph mentioned we think, in view of the evidence and the special charges given at appellant's request, the jury could not have been misled. Contained in the special charges given is the statement: "To constitute a common-law marriage, the parties must unconditionally agree to live together as husband and wife during their lives, and then live together and cohabit as such, and so hold themselves out to the public."

In our opinion, there was no error committed in permitting the witnesses, who testified to the facts going to show that the appellant

and his reputed wife lived together and held themselves out as husband and wife and that the appellant described her as his wife in introducing her to his friends, to add that they had never heard the appellant disclaim the relationship.

There was no impropriety in receiving the proof that a daughter was born to Mrs. Ahlberg during her cohabitation with the appellant. Waldrop v. State, 41 Texas Crim. App., 199; State v. Jenkins, 44 S. W. Rep., 220.

The appellant having by his testimony questioned his parentage of the daughter, his letter to her calling her his little girl, expressing a desire to be present upon her birthday, and regretting his inability to spend that day with the mother and daughter, was properly received.

Bills of exceptions not discussed, including those reserved to remarks of counsel, have been carefully examined, and disclose, so far as we are able to determine, no harmful departure from the rules of practice.

The judgment is ordered affirmed.

*Affirmed.*

ON REHEARING.

November 17, 1920.

LATTIMORE, JUDGE.—Appellant has filed his motion for rehearing in this case, in which he strenuously urges two questions for our consideration; the first question being that the evidence does not sufficiently support the verdict, and does not measure up to the law's requirements in regard to a common-law marriage.

In addition to upholding what has been said heretofore in this regard by this Court in its opinion, we desire to add thereto the following:

The statement of facts discloses that a witness testified that appellant left home some time in December, of 1909, with the woman alleged in this case to be his first and living wife, and that soon after leaving home, appellant wrote back that he and said woman, Ellen Ingall, known in this record as Ellen Ahlberg, were married. Said witness further testified, as did a number of others, that some time during the same month, appellant and said woman returned and called each other husband and wife, appellant introducing said woman as his wife, and thereafter for many years lived with her, all the time giving out that she was his wife, and that her daughter was their child. People with whom appellant traded, and who were well acquainted with him and his first wife, Ellen, and who lived in their immediate neighborhood, and the doctor who waited on said wife during confinement, all joined in testifying to the relation of appellant and said woman, accompanied by his declarations throughout

a period of approximately ten years. The only witness who denied the fact of appellant having married said woman with all the formalities prescribed by statute, was appellant himself, who testified as a witness in his own behalf, that he never had married said woman at any time.

The trial court, in his charge to the jury, defined what constituted a statutory marriage in this State, and also what constituted a common-law marriage, and then proceeded to instruct them that if they found from the evidence that appellant, having a lawful wife then living, did marry Audrey Clark, they should find him guilty of bigamy.

We have carefully gone over the entire record, and think the evidence entirely sufficient to support the judgment, irrespective of the question of a common-law marriage.

The admission of the appellant that he was married prior to the alleged bigamous marriage, is competent evidence against him. Gorman v. State, 23 Texas Rep., 646; Bell v. State, 33 Texas Crim. Rep., 163; Bryan v. State, 63 Texas Crim. Rep., 204.

It has also been held in this State that a former marriage may be proven by general repute, taken in connection with evidence of cohabitation and the admissions of the accused. Adkisson v. State, 34 Texas Crim. Rep., 296; Dumas v. State, 14 Texas Crim. App., 464.

This Court, in Johnson v. State, 150 S. W. Rep., 936, cites approvingly the Dumas case, *supra*, holding that the confession of accused, together with evidence of cohabitation and other circumstances, will sustain a conviction for bigamy, and such is our opinion. The production of the license for the first marriage is not indispensable, nor is it necessary to produce witnesses who were present at such marriage. Nance v. State, 17 Texas Crim. App., 389; Morville v. State, 63 Texas Crim. Rep., 553.

It is apparent from the record that appellant and Ellen Ingall went away from the neighborhood in which they lived, in December, 1909, and that he wrote back soon after they left that he and Ellen were married; that when he came back he took her to his home as his wife: that for a number of years he introduced her as such, and called her children his; and in every other way acted toward her in entire corroboration and cognizance with and of the statement contained in his written communication that they were married. We think this justified the jury in concluding that the parties were legally married; and we further observe that the other matters in the court's charge, in reference to a common-law marriage, which are complained of, at most were wholly harmless.

Complaint is also made in this motion that while appellant was on the stand testifying, the prosecuting attorney asked him if he had not been warned by a certain neighbor that his course of conduct would likely get him into the penitentiary? This question was objected to, and during the course of a discussion with the prosecuting

attorney, who was urging its admissibility, the court remarked that it occurred to him that the proposition involved the giving of advice by a third party, by which the appellant was not bound in any way, and the prosecuting attorney replied that he did not seek to bind the appellant by the advice. The court sustained the objection and the question was not answered. It is only claimed in support of the matters complained of in bills of exception numbers 3 and 4, which set out appellant's proposition in regard to the above matters, that the question of the county attorney was necessarily harmful to the appellant. We do not think so, and in view of the fact that the trial court sustained the objection, we are unable to perceive any ground for reversal of this case because of such matter. We do not think the court's remark to the prosecuting attorney constituted a comment on the weight of the evidence, or was of such character as could injure the appellant. We have found nothing in this motion which leads us to conclude that the former opinion of this court was in any wise incorrect, and said motion is overruled.

*Overruled.*