## J. W. WOODS v. THE STATE.

No. 2022. Decided October 23, 1912.

**1.—Attempt to Commit Arson—Sufficiency of the Evidence.**

Where, upon trial of an attempt to commit arson the evidence, although circumstantial, was amply sufficient to sustain the conviction, there was no error.

**2.—Same—Name of Defendant.**

Where the court permitted, on motion to quash the indictment because defendant's name was not properly alleged, the record to be changed so as to contain the proper name of the defendant, there was no error. Article 560, Code Criminal Procedure.

**3.—Same—Indictment.**

Where the indictment properly alleged the offense of an attempt at arson, there was no error in overruling a motion to quash.

**4.—Same—Continuance.**

Where the application for continuance showed a want of diligence in securing the absent testimony, it being the second application, there was no error in overruling same.

**5.—Same—Charge of Court—Insanity—Article 743.**

Where, upon trial of an attempt at arson, the court submitted a charge on insanity more favorably to defendant than the law required and the same could not have misled the jury to the injury of defendant, there was no error under article 743, Revised Code Criminal Procedure.

Appeal from the District Court of Johnson. Tried below before the Hon. O. L. Lockett.

Appeal from a conviction of an attempt at arson; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was indicted, tried and convicted of an attempt at arson. His penalty was fixed at two years in the penitentiary.

While the evidence was circumstantial it was amply sufficient for the jury to find him guilty.

The appellant made a motion to quash the indictment on two grounds—the first that it alleged his name to be "J. W. Wood," when his name was "J. W. Woods." The record shows that when appellant filed a written motion showing his name was "Woods," the court granted his motion and ordered the record changed so as to make his name "Woods" instead of "Wood" in the papers. There was no error in this. The statute expressly authorized it. Code Criminal Procedure, article 560 (549). The other ground is that the offense is not set forth in plain and intelligible words, without in any way pointing out wherein there was any defect. The indictment was in three counts. The third only was submitted to the jury for a finding. That charges that appellant on or about June 21, 1911, did then and there unlawfully, wilfully and maliciously and with intent and by means caculated to effect the object, attempt to set fire to and burn the house of John W. Floore, situated in Johnson County, Texas, to wit; that he did then and there unlawfully, wilfully and maliciously pour a quantity of kerosene oil, a highly inflammable and combustible liquid upon the floor of said house and upon the billiard and pool tables in said house and did then and there set fire to the same, intending to burn the house. The motion to quash was properly overruled.

By another bill appellant complains of the overruling of his second application for a continuance which was made on account of the absence of his wife, who resided in Dallas County, but was then in Roswell, New Mexico. By her he claimed he expected to prove an alibi. The bill shows, as explained by the court, that this was a second application for a continuance; that the case had been continued at a former term of the court, February 27, 1912, on account of the absence of his wife. This application was heard and overruled June 3, 1912; that appellant had had no process issued or served for his wife after the first continuance was granted on his application on account of her absence, the court stating that it was made known to him that she had been absent from the State for several months and no explanation was made why she was absent or as to her motive

in being absent or as to whether she was permanently absent or not, except the bare statement of appellant that her absence was temporary when she went, nor whether she would ever return or whether they were separated. There was no error in overruling this application for a continuance.

The only other complaint of appellant is to this part of the court's charge: "The fact that defendant's mind was simply weak or impaired, and that he was not insane as above defined would be no defense."

One of appellant's defenses was insanity. The court correctly and aptly in his charge defined the offense and submitted the case to the jury, requiring them to believe, beyond a reasonable doubt all of the facts alleged and proven necessary to show his guilt before they could find him guilty and, unless they did so, they must acquit him, and in addition, that the burden of proof was on the State, in the terms of the statute, and the reasonable doubt as also required by the statute. The whole charge on the subject of insanity was as follows:

"Under our law no act done in a state of insanity can be punished as an offense, but every man is presumed to be of sane mind until the contrary appears and on this issue the burden of proof is upon the defendant to clearly establish his insanity by a preponderance of the evidence. The legal test is, whether or not the defendant was at the time of the alleged offense laboring under such defects of reason, either temporarily or permanently to such an extent as to know the nature and quality of the particular act he is charged with doing, or if he did know it that he did not know that he was doing wrong, and if you find that at said time, the defendant was insane, as above defined, then you will find the defendant not guilty. You are further instructed that the fact that defendant's mind was simply weak or impaired, and that he was not insane as above defined would be no defense."

Appellant's only complaint of this charge is that it was assumed to the jury that defendant was of unsound mind but not sufficient to justify him under the evidence, and was on the weight of the evidence. If it did assume that the defendant was of unsound mind to some extent and in that respect on the weight of the evidence, it would have been in appellant's favor and not against him; but the particular portion of the charge objected to, in our opinion, states a correct legal proposition to the effect that if appellant's mind was simply weak, or impaired but that he was not insane, that would be no defense. The court, as quoted in the above charge, had correctly, to which there was no objection, told the jury that no act done in insanity could be punished as an offense; that the legal test of insanity was whether or not appellant at the time of the alleged offense was laboring under such defect of reason, either temporary or permanently, to such an extent as to know the nature and quality

of the particular act with which he is charged with doing, or if he did know it that he did not know that he was doing wrong, and if he was in that condition to find him not guilty. The charge, taken as a whole, could not have misled the jury and did not do so to his injury, in our opinion. Code Criminal Procedure, article 743 (723). The evidence in the case showed, without dispute, that appellant continuously for many years before and up to the time the offense was charged to have been committed attended to his ordinary business correctly and properly. He was introduced as a witness in the case and, so far as the statement of facts shows, testified as intelligently as any other ordinary witness and told all about what occurred, so far as he was concerned, at and just prior to the alleged attempt at arson, and all about what property he had in connection therewith and which was affected by the burn. He introduced several witnesses who had known him for different lengths of time up to the time of the fire, the effect of their testimony being that he had hallucinations of going to get a large sum of money and that he was going to set up some of these parties and give them some of it when he came into possession of it; that he was going to get it through his wife from Germany. None of these witnesses, with possibly one exception, would testify that he did not know right from wrong and was not responsible for his alleged act of attempt at arson. One witness did testify that he thought he did not know right from wrong or was liable to do anything, while another, the sheriff, testified as positively the reverse. The testimony of each of his witnesses on this subject was based entirely on his hallucinations or his contemplated acquisition of large sums of money. The evidence was amply and clearly sufficient to justify the jury to believe that he was sane and that he was not insane.

The judgment will be affirmed.

*Affirmed.*